**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, | |
| Plaintiff, | Civil Action No. 26-cv-2196 |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

**<u>COMPLAINT</u>**

Milwaukee Electric Tool Corporation ("Plaintiff" or "Milwaukee"), by and through its undersigned counsel, hereby files this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

**I.      <u>Jurisdiction And Venue</u>**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United States, including New York, through at least the fully interactive commercial internet stores operating

1

under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3. This Court may exercise personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A), which permits service under New York's long-arm statute, C.P.L.R. § 302(a)(1) and 302(a)(3)(i) and (ii), or alternatively pursuant to Fed. R. Civ. P. 4(k)(2), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District, derive substantial revenue from business transactions in New York and in this Judicial District, and otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants comports with due process and does not offend traditional notions of fair play and substantial justice.

4. In addition, Defendants' illegal counterfeiting and infringement actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

5. For example, Defendant Internet Stores accept orders of counterfeit products from and offer to ship to New York addresses located in this Judicial District.

6. Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York and in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal and Shop Pay, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more

2

particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, communicate with Defendants regarding their listings for counterfeit products, and place orders for, receive invoices for, and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.      Parties

7.      Plaintiff Milwaukee Electric Tool Corporation is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located in Brookfield, Wisconsin.

8.      Since its founding in 1924, Milwaukee has continuously used the MILWAUKEE Marks, which have long served to identify and distinguish Milwaukee tools from those of others. Milwaukee Tool has sold hundreds of millions of products under the MILWAUKEE Marks, and Milwaukee has continuously promoted the mark on its packaging and products, creating a direct consumer association between the MILWAUKEE Marks and Milwaukee as the source of products (hereinafter referred to as the "MILWAUKEE Products").

https://www.milwaukeetool.com/



9.    This action has been filed to combat online trademarks who trade upon Plaintiff's reputation and goodwill and valuable intellectual property by selling and/or offering for sale unauthorized and infringing versions of the MILWAUKEE Products in violation of Plaintiff's federally registered trademarks.

10.    Plaintiff Milwaukee Tool has long engaged in the business of manufacturing and marketing in interstate commerce tools sold under the MILWAUKEE Trademarks. MILWAUKEE is a federally registered trademark of Milwaukee Tool; Trademark Registration Nos. 917,618; 1,489,877; 1,739,475; 2,624,843; 3,772,366; 3,908,609; 4,203,253; 4,203,255; 4,203,258; 4,203,259; 4,207,146; 4,400,601; 4,400,602; 4,407,484; 4,534,864; 4,580,441; 4,861,744; 4,849,244; 5,071,525; 5,085,184; 5,085,201; 5,085,219; 5,085,220; 5,085,222; 5,085,223; 5,085,240; 5,117,238; 5,117,290; 5,203,577; 5,203,630; 5,318,403; 5,883,416; 5,894,915; 6,011,155; 6,089,843; 6,089,844; 6,089,845; 6,175,446; 6,209,035; 6,209,036; 6,259,202; 6,269,364; 6,369,616; 6,694,516; 6,705,395; 7,619,998; 7,620,164; 7,620,165; 7,620,166; 7,650,845; and 7,676,072 (the "MILWAUKEE Marks").

| Trademark | Registration No. | Goods and Service |
|---|---|---|
| MILWAUKEE | 2,624,843 | Maintenance and power tools, namely, hole shooters, screw shooters, screwdrivers, hammers, hammer drills, driver/drills, drill presses, magnetic drill presses, coring machines, sander/grinders, sanders, grinders, electric saws, circular saws, reciprocating saws, worm drive saws, cut-off machines, nut runners, nibblers, polishers, routers, impact wrenches, shears, drain cleaners, vacuum cleaners, and attachments therefor in Classes 013, 019, 021, 023, 031, 034, 035. |
| MILWAUKEE | 5,203,577 | Hand tools, namely, hand saws and blades for hand saws, utility knives and blades for utility knives, duct knives, folding knives; hand tools, namely, scissors, snips, seamers, crimpers, wrenches, screwdrivers, nut drivers, pliers, |

4

| | | |
|---|---|---|
| | | tubing cutters, clamps; tool belts and tool pouches for attachment to tool belts; chalk line reels; hand powered staple guns and hammer tackers in Classes 023, 028, 044 |
| MILWAUKEE | 5,203,630 | Batteries and battery chargers in Classes 021, 023, 026, 036, 038 |
| MILWAUKEE | 5,318,403 | Batteries and battery chargers in Classes 021, 023, 026, 036, 038 |
| MILWAUKEE | 5,894,915 | Electrically heated clothing, namely, jackets, sweatshirts, vests, gloves, hand warmers; flashlights; lanterns for lighting; flood lights; LED flashlights; portable utility lights; portable battery-operated lights; spot lights in Classes 013, 021, 023, 031, 034 |
| MILWAUKEE | 6,705,395 | Hard hats; Protective face-shields for protective helmets; Protective glasses; Protective industrial face masks; Protective industrial face shields; Protective helmets; Protective industrial respirators; Reflective safety vests; Safety helmets in Classes 021, 023, 026, 036, 038 |
| MILWAUKEE | 7,619,998 | Backpacks; Back packs; Tool bags sold empty; Tool pouches, sold empty in Classes 001, 002, 003, 022, 041 |
| MILWAUKEE | 7,620,164 | Tool boxes, not of metal, empty; Tool and tool accessory boxes not made of metal sold empty and parts and fittings therefor; Non-metal tool boxes in Classes 002, 013, 022, 025, 032, 050 |
| MILWAUKEE | 7,620,165 | Felt tip pens; Marking pens in Classes 002, 005, 022, 023, 029, 037, 038, 050 |
| MILWAUKEE | 7,620,166 | Tool boxes of metal; Tool chests of metal sold empty in Classes 002, 012, 013, 014, 023, 025, 050 |
| MILWAUKEE | 7,650,845 | Mobile storage carts for tools and tool accessories; Tire inflators; Carts; Goods handling carts; Handling Carts in Classes 019, 021, 023, 031, 035, 044 |
| MILWAUKEE | 7,676,072 | Lanyards for holding power tools in Classes 013, 019, 021, 023, 024, 031, 034, 035 |
| | 5,883,416 | Batteries in Classes 021, 023, 026, 036, 038 |

| | Reg. No. | Goods/Services |
|---|---|---|
| | 5,845,616 | Batteries in Classes 021, 023, 026, 036, 038 |
| | 5,117,238 | Hand tools, namely, hand saws and blades for hand saws, utility knives, blades for utility knives, insulation knives, duct knives, folding knives; hand powered staple guns and hammer tackers; Hand tools, namely, scissors, snips, hand seamers, screwdrivers, nut drivers, pliers, and tubing cutters; Tool belts and tool pouches for attachment to tool belts; Hand tools in the nature of hand seamers; Hand tools, namely, wire crimpers; Hand tools, namely, clamps; chalk line reels in Classes 023, 028, 044 |
| | 5,071,525 | Batteries, battery chargers, radios; electronic test and measuring instruments and devices and electronic test tools, namely, digital multi-meters, voltage measuring clamps and forks, current measuring clamps and forks, voltage detectors, distance meters, temperature meters, and the structural parts thereof; Structural accessories for the aforementioned goods, namely, electrical cables for powering the devices, probes for testing integrated circuits; Inspection cameras, and the structural parts and structural accessories thereof, namely, extension cables, replacement cables, hooks in the nature of camera mounts and supports, scientific and technical apparatus in the nature of optical mirrors, and magnets not for medical use; levels, namely, battery powered plumb lasers and torpedo levels; tape measures in Classes 021, 023, 026, 036, 038 |
| Milwaukee | 917,618 | Portable electric drills and attachments therefor; saws and attachments therefor; sanders; screw drivers; polishers; impact wrenches ; metal cutting shears in Class 023 |
| Milwaukee | 1,489,877 | Electrically powered tools and equipment, namely-hole and screw shooters, diamond core drills, diamond core bits, drill presses having a weight of 200 pounds or less, and parts for each of the foregoing in Class 021 and 023 |
| Milwaukee | 1,739,475 | Electrically powered wire rope and link chain hoists, and overhead trolleys for moving the hoists, and parts therefor in Class 023; |

6

| | | |
|---|---|---|
| | | Manually operated link chain and lever hoists and overhead trolleys for moving the hoists, and parts therefor in Class 021 |
| Milwaukee | 3,772,366 | Batteries and battery chargers, electronic test and measuring instruments and devices and electronic test tools, namely, digital multi-meters, voltage measuring clamps and forks, current measuring clamps and forks, voltage detectors, and the structural parts and structural accessories thereof in Classes 021, 023, 026, 036, 038 |
| Milwaukee | 3,908,609 | Hand tools, namely, hand operated manual tools, namely, saws, blades for hand saws, utility knives, blades for utility knives, screwdrivers, nutdrivers, pliers, tubing cutters, snips, tin snips, wrenches, wire strippers, clamps, chisels, and tool belts in Classes 023, 028, 044 |
| Milwaukee | 5,085,201 | Backpacks; Tool bags sold empty; Tool pouches, sold empty in Classes 001, 002, 003, 022, 041 |
| Milwaukee | 5,085,219 | Felt-tip pens; Marking pens in Classes 002, 005, 022, 023, 029, 037, 038, 050 |
| Milwaukee | 5,085,220 | Tool boxes of metal; Tools chests of metal sold empty in Classes 002, 012, 013, 014, 023, 025, 050 |
| Milwaukee | 5,085,222 | Tool and tool accessory boxes not made of metal sold empty and parts and fittings therefor; Tool boxes not of metal in Classes 002, 013, 022, 025, 032, 050 |
| Milwaukee | 5,085,223 | Bottle openers in Classes 002, 013, 023, 029, 030, 033, 040, 050 |
| Milwaukee | 5,085,240 | Cutting fluids; Lubricating oils and greases in Classes 001, 006, 015 |
| Milwaukee | 5,117,290 | Hand tools, namely, hand saws and blades for hand saws, utility knives, blades for utility knives, insulation knives, duct knives, folding knives; hand powered staple guns and hammer tackers; Hand tools, namely, scissors, snips, hand seamers, screwdrivers, nut drivers, pliers, and tubing cutters; Tool belts and tool pouches |

7

| | | |
|---|---|---|
| | | for attachment to tool belts; Hand tools in the nature of hand seamers, Hand tools, namely, wire crimpers; Hand tools, namely, clamps; chalk line reels in Classes 023, 028, 044 |
| Milwaukee | 6,011,155 | Flashlights in Classes 013, 021, 023, 031, 034 |
| Milwaukee | 6,089,843 | Power tools, namely, rivet tools; chainsaws and chainsaw replacement chains in Classes 013, 019, 021, 023, 031, 034, 035 |
| Milwaukee | 6,089,844 | Power tools, namely, planers; Power tools, namely, drywall screw guns; Power tools, namely, mud mixers; drain and sewer cleaning power tools in Classes 013, 019, 021, 023, 031, 034, 035 |
| Milwaukee | 6,089,845 | Power tools, namely, vacuum cleaners, wet/dry vacuums and vacuum attachment accessories sold as a unit therewith; dust extractors and dust extractor attachment accessories sold as a unit therewith in Classes 013, 019, 021, 023, 031, 034, 035 |
| Milwaukee | 6,175,446 | Inspection cameras, and the structural parts and structural accessories thereof, namely, extension cables, replacement cables, hooks, minors and magnets; levels, namely, battery powered plumb lasers not for medical use, motorized rotary levels, box levels, masonry levels, i-beam levels, torpedo levels and utility levels; tape measures; rulers, namely, straight rulers and folding rulers in Classes 021, 023, 026, 036, 038;<br><br>Flashlights in Classes 013, 021, 023, 031, 034;<br><br>Clothing, namely, jackets, shirts, sweatshirts and hats; all the foregoing not relating to baseball or softball or to a baseball or softball team, league, mascot or stadium in Classes 022, 039 |
| Milwaukee | 6,209,035 | Protective work gloves; lanyards for safety purposes for fall protection in Classes 021, 023, 026, 036, 038 |
| Milwaukee | 6,209,036 | Power tools, namely, power-operated sprayers and sprayer tanks; power-operated pipe threaders; power-operated fish tape for pulling |

| | | |
|---|---|---|
| | | cables in Classes 013, 019, 021, 023, 031, 034, 035 |
| *Milwaukee* | 6,369,616 | Air compressors as in Classes 013, 019, 021, 023, 024, 031, 034, 035 |
| *Milwaukee* | 6,259,202 | Position indicating beacon using radio frequency technology to locate asset in the nature of tools, tool attachments, tool accessories, tool boxes, tool storage carts, lights, batteries, battery chargers and electronic test and measuring instruments and devices in Classes 021, 023, 026, 036, 038 |
| M12 | 4,203,255 | Flashlights in Classes 013, 021, 023, 031, 034 |
| M12 | 4,207,146 | Clothing, namely, jackets in Classes 022, 039 |
| M12 | 4,400,602 | Power tools, namely, screwdrivers, rotary hammers, hammer drills, driver/drills, right angle drills, rotary tools, oscillating tools, expansion tools, grease guns, power saws, reciprocating saws, jig saws, band saws, palm nailers, impact wrenches, impact drivers, tubing cutters, powered shears, caulk guns, ratchet wrenches, cable cutters in Classes 013, 019, 021, 023, 024, 031, 034, 035 |
| M12 | 5,085,184 | Batteries; battery chargers; radios; electronic test and measuring instruments and devices and electronic test tools, namely, temperature meters, thermal imagers, thermal cameras, voltage measuring clamps and forks, current measuring clamps and forks, inspection cameras; levels, namely, battery powered plumb lasers in Classes 021, 023, 026, 036, 038 |
| M18 | 4,203,258 | Batteries, battery chargers and radios in Classes 021, 023, 026, 036, 038 |
| M18 | 4,203,259 | Flashlights in Classes 013, 021, 023, 031, 034 |
| M28 | 4,203,253 | Batteries, battery chargers in Classes 021, 023, 026, 036, 038 |
| M28 | 4,400,601 | Power tools, namely, right angle drills, rotary hammers, impact wrenches, circular saws in Classes 013, 019, 021, 023, 031, 034, 035 |
| MX FUEL | 6,694,516 | Portable utility lights; mobile light towers; work lights in Classes 013, 021, 023, 024, 031, 034 |

| | | |
|---|---|---|
| XC | 6,269,364 | Power Tools, namely, power-operated hammers, rotary hammers, hammer drills, drills/drivers, right angle drills, expansion tools in the nature of tools used to temporarily expand pipes, impact wrenches, impact drivers, power-operated saws, reciprocating saws, jig saws, circular saws, band saws, grinders, power-operated grease guns, power-operated caulk guns, vacuum cleaners and attachments therefor in Classes 013, 019, 021, 023, 024, 031, 034, 035 |
| | 4,861,744 | Power tools, namely, screwdrivers, hammers, rotary hammers, hammer drills, driver/drills, right angle drills, ratchet wrenches, impact wrenches, impact drivers, rotary tools, oscillating multi-tools, expansion tools, grease guns, power saws, reciprocating saws, jig saws, circular saws, band saws, grinders, tubing cutters, cable cutters, powered shears and caulk guns in Classes 013, 019, 021, 023, 031, 034, 035 |

11. The MILWAUKEE Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the MILWAUKEE Marks pursuant to 15 U.S.C. § 1057(b).

12. True and correct copies of the registration certificates for the MILWAUKEE Marks are attached as Exhibit 1.

13. The MILWAUKEE Marks have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the MILWAUKEE Marks in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the MILWAUKEE website and social media sites, and point of sale materials.

14.    The MILWAUKEE Marks have been continuously used and have never been abandoned. The MILWAUKEE Marks are valid, subsisting, and in full force and effect. The registrations of the MILWAUKEE Marks constitute prima facie evidence of their validity pursuant to 15 U.S.C. §1057(b).

15.    Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the MILWAUKEE Marks. As a result, products associated with the MILWAUKEE Marks are recognized and exclusively associated by consumers and the public as being products sourced from Plaintiff.

16.    Plaintiff has made efforts to protect its interests in and to the MILWAUKEE Marks. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the MILWAUKEE Marks without the express written permission of Plaintiff.

17.    Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the MILWAUKEE Products to consumers within the United States, including New York and in this Judicial District.

## III.    Factual Background

18.    Prior to the rise of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through

11

traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for effective enforcement actions to be undertaken since availing itself of takedown procedures to remove infringing MILWAUKEE Products would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights against the hundreds of anonymous defendants that are selling illegal counterfeit and infringing products at prices below the cost of an original, authentic MILWAUKEE Product:

**PLAINTIFF'S OFFICIALLY LICENSED PRODUCT**









### COUNTERFEIT/INFRINGING LISTINGS

### [REMOVED FROM PUBLIC DOCKET]

19.     The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products.

20.     In an effort to illegally profit from the creative content of the MILWAUKEE Marks, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authentic MILWAUKEE Products.

21.     Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

22.    The systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

23.    To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent 2020 Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network[1].

24.    The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

25.    In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic[2].

26.     Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine MILWAUKEE Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's MILWAUKEE Products that illegally utilize the MILWAUKEE Marks ("Infringing Products").

27.     Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 2.

28.     The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

---

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

29.    The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

30.    The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

31.    Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

32.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a

calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

33.     A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2[3].

34.     Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

35.     Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

36.     Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately counterfeited Plaintiff's MILWAUKEE Marks in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this Judicial District of New York, over the Internet. Each Seller

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

### Count I - Trademark Infringement and Counterfeiting
**(15 U.S.C. § 1114)**

37.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

38.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered MILWAUKEE Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MILWAUKEE Marks are distinctive. Due to Plaintiff's substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiff and authentic MILWAUKEE Products offered, sold, or marketed under the MILWAUKEE Marks.

39.    Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its MILWAUKEE Marks and with knowledge that Defendants' Infringing Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the MILWAUKEE Marks and used spurious designations that are identical with, or substantially indistinguishable from, the MILWAUKEE Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

40.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiff's exclusive rights in and to the

MILWAUKEE Marks through their systematic and deliberate participation in such unlawful activities.

41.    Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the MILWAUKEE Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

42.    Defendants' unauthorized use of the MILWAUKEE Marks on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiff has developed in the MILWAUKEE Marks through years of quality control and significant investment.

43.    Defendants' actions constitute willful counterfeiting of the MILWAUKEE Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiff to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

44.    Defendants' continued, knowing, and willful use of the MILWAUKEE Marks without Plaintiff's consent or authorization constitutes intentional infringement of the MILWAUKEE Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

19

45.    Plaintiff has no adequate remedy at law, and if these Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the MILWAUKEE Marks, for which there is no adequate remedy at law.

46.    The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit MILWAUKEE Products.

## Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

47.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

48.    Defendants' promotion, marketing, offering for sale, and sale of infringing MILWAUKEE Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

49.    By using the MILWAUKEE Marks in connection with the sale of unauthorized Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized Infringing Products.

50.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

51.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive

20

the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its MILWAUKEE Products, and MILWAUKEE Marks.

52.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## IV.    Prayer For Relief

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the MILWAUKEE Marks or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized MILWAUKEE Product or is not authorized by Plaintiff to be sold in connection with the MILWAUKEE Marks;

    b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and not approved by Plaintiff for sale under the MILWAUKEE Marks;

    c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit and Infringing MILWAUKEE Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the MILWAUKEE Marks and damaging Plaintiff's goodwill;

    e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing Products or related products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the MILWAUKEE Marks;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the MILWAUKEE Trademarks;

2)     That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)     Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiff, which bear the MILWAUKEE Trademarks, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiff, which bear the MILWAUKEE Marks; and

c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5)      In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6)      For Judgment in favor of Plaintiff against Defendants that they have:

a. willfully infringed Plaintiff's rights in its federally registered trademarks; and

b. otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7)      For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial;

8)      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

23

9)      Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Dated: March 18, 2026                              Respectfully submitted,

                                                   */s/ Shengmao Mu*
                                                   Shengmao Mu
                                                   NY No. 5707021
                                                   **WHITEWOOD LAW PLLC**
                                                   57 West 57th Street, 3rd and 4th Floors
                                                   New York, NY, 10019
                                                   Telephone: (917) 858-8018
                                                   Email: smu@whitewoodlaw.com

                                                   *Counsel for Plaintiff*