**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br> Defendants. | Civil Action No. 26-cv-2196 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AS TO DEFENDANT DOOYUTOOL**

Plaintiff Milwaukee Electric Tool Corporation ("Milwaukee") respectfully submits this reply in further support of its motion for a preliminary injunction as to Defendant DOYUTOOL with the brand name DOOYUTOOL.

**I.     PRELIMINARY STATEMENT**

Milwaukee owns multiple federally registered trademarks, including the word marks "Milwaukee" and "M18," among others. *See* Complaint ¶ 10. Critically, the "M18" mark - registered with the United States Patent and Trademark Office under Registration No. 4,580,441 - expressly covers "power tools," the very category of product Defendant is selling. *See* https://tinyurl.com/3trdk5jc. Defendant's argument that it is selling a "tool, not a battery" therefore does not avoid Milwaukee's claim - it confirms it.

Defendant's opposition (Dkts. 23-24) rests on a false premise. It argues that because the infringing item it is selling is "a tool, not a battery," and because the Amazon listing identifies the brand as DOOYUTOOL, there can be no actionable confusion with any of Milwaukee's registered

trademarks. That is not the law. The relevant question is whether Defendant's use of Milwaukee's M18 mark and other registered marks is likely to cause confusion as to origin, affiliation, sponsorship, or endorsement. *See Capri Sun GmbH v. Am. Bev. Corp.*, 595 F. Supp. 3d 83, 168 (S.D.N.Y. 2022) (even if products are not identical "[w]here the products serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion." (citation and quotation omitted)).

First, regardless of whether Defendant's product is a battery or not, Milwaukee has registered the word mark "M18" which expressly covers goods including "power tools" and therefore overlaps with the "tools" that Defendant is admittedly selling. *See* https://tinyurl.com/3trdk5jc.

Second, the product depicted in Defendant's Exhibit A does not merely state in passing that the product is compatible with Milwaukee batteries. It uses Milwaukee's mark repeatedly throughout the listing and, most importantly, displays "M18 V MAX" prominently in the main product image itself, alongside battery imagery, without any disclaimer in that image or accompanying description that the product is unaffiliated with Milwaukee. Dkt. 24-1 at 2. For the Court's convenience, it is also shown below.



M18 V MAX on Defendant's Product Page

The title and bullet points then repeatedly invoke "Milwaukee," "M18," and "M18 Fuel" to market the product. *Id.*; Dkt. 24 ¶¶ 4-7; Dkt. 25 ¶¶ 6-9. That is far more than the restrained nominative use permitted under Second Circuit law.

Defendant's reliance on *Roku Inc. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, No. 22-cv-850 (LJL), 2022 WL 1598208 (S.D.N.Y. May 20, 2022), is misplaced. In *Roku*, the challenged references identified genuine Roku products with which the remote was compatible, and the stylized Roku reference appeared only as one of several shortcut buttons to competing streaming services. *Id.* at *4-5. Here, by contrast, Defendant uses the M18 mark not only in product description text, but as a prominent identifier in the main product image itself and throughout the listing in a manner that suggests the product belongs in Milwaukee's M18 line. *Roku* does not bless that conduct.

Because Milwaukee has demonstrated a likelihood of success on the merits, irreparable harm is presumed as a matter of law under 15 U.S.C. § 1116(a). But even setting aside that presumption, the record independently establishes irreparable harm: Defendant's conduct deprives Milwaukee of control over product quality and safety, and damages the goodwill and reputation Milwaukee has built around its M18 mark, and injuries that are, by their nature, difficult to quantify and cannot be adequately remedied by money damages. As such, the preliminary injunction should issue.

## II.    MILWAUKEE HAS SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS

### A.    The Opposition Asks The Wrong Question, and Confirms Plaintiff's Position.

Defendant repeatedly emphasizes that the accused item is "a tool, not a battery." Dkt. 23 at 1-2, 4, 6; Dkt. 24 ¶ 5; Dkt. 25 ¶ 4. That distinction does not resolve the infringement issue. The Lanham Act prohibits unauthorized use of a registered mark in a manner likely to cause confusion,

mistake, or deception. 15 U.S.C. § 1114(1). The question is not whether Defendant sold a certain type of product such as a battery. The question is whether Defendant used Milwaukee's mark to market its own product in a manner likely to confuse consumers as to source, affiliation, sponsorship, or endorsement. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

Defendant admits it did exactly that. Its own declarants concede that the listing targets consumers who already own a "Milwaukee M18 Fuel" battery and charger, and that the listing repeatedly invokes "Milwaukee," "M18," and "M18 Fuel" to market the product. Dkt. 24 ¶¶ 4-7; Dkt. 25 ¶¶ 6-9. There is therefore no dispute that Defendant used Milwaukee's registered trademarks. The only question is whether that use is likely to cause consumer confusion, and on this record, the answer is yes.

### B.  Defendant's Use Exceeds Any Permissible Compatibility Use.

The Second Circuit does not treat nominative fair use as a free-standing defense. Instead, courts consider the usual likelihood-of-confusion analysis together with whether: (1) use of the plaintiff's mark is necessary to identify the plaintiff's product and the defendant's product; (2) the defendant used only so much of the mark as reasonably necessary; and (3) the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff. *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 168-69 (2d Cir. 2016).

Defendant fails the second and third considerations.

First, Defendant used substantially more of Milwaukee's mark than was necessary to communicate compatibility. A truthful compatibility statement could say, for example, that the product is compatible with Milwaukee 18V batteries. But Defendant did not stop there. Defendant placed "M18 V MAX" prominently in the main product image itself, next to battery imagery, in a manner that functions like product branding rather than a limited compatibility reference. Dkt. 24-

4

1 at 2. Defendant also repeated Milwaukee and M18 references throughout the listing text. *Id*.; Dkt. 24 ¶¶ 4-7; Dkt. 25 ¶¶ 6-9. That is not minimal use.

Second, Defendant's presentation suggests sponsorship or endorsement. The main product image does not say "compatible with Milwaukee" or "not affiliated with Milwaukee." Instead, it presents the product with a large "M18 V MAX" badge and battery imagery, creating the impression that the product belongs to Milwaukee's M18 ecosystem or line of products. Dkt. 24-1 at 2. The small "Brand: DOOYUTOOL" notation elsewhere on the page does not eliminate that impression, particularly where the product's central image and repeated copy are doing the real marketing work. Nor does "Battery NOT Included" cure the problem. That phrase tells the consumer only that no battery is included in the box, while saying nothing about whether the tool is affiliated with, endorsed by, or manufactured by Milwaukee. It is a contents disclosure, not a disclaimer of affiliation. A consumer viewing a product image bearing a large "M18 V MAX" badge alongside battery imagery would have no reason to conclude, from "Battery NOT Included," that Milwaukee has no connection to the product.

*Security University* is instructive. There, the Second Circuit explained that even where some nominative use is permissible, infringement still exists when the defendant's use suggests sponsorship or endorsement or inaccurately reflects the relationship between the parties' goods or services. *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d at 168-69. That is precisely the problem here.

### C.    Roku Is Distinguishable.

*Roku* does not help Defendant. There, the challenged Amazon listing used "Roku" to identify genuine Roku televisions and a "Roku Channel" shortcut button that appeared alongside buttons for Netflix, Hulu, and Disney+, making clear that the buttons were simply shortcuts to competing streaming applications. *Roku,* 2022 U.S. Dist. LEXIS 91355, at *4-5. The court

concluded that, in that context, the plaintiff had not shown likely confusion as to origin or sponsorship. *Id.*

This case is materially different. Most importantly, Defendant's use of Milwaukee's mark is not confined to compatibility language. The product image itself prominently displays "M18 V MAX" as a badge on the image used to sell the product. Dkt. 24-1 at 2. That is a far stronger source-signaling use than the descriptive compatibility references in *Roku*. In addition, Defendant's listing repeatedly uses "Milwaukee," "M18," and "M18 Fuel" throughout the title and bullet points. *Id.*; Dkt. 24 ¶¶ 4-7; Dkt. 25 ¶¶ 6-9. And unlike *Roku*, there is no surrounding context in the main product image itself that clearly dispels sponsorship confusion. There are no comparable competing platform marks presented in a way that would tell consumers this is merely a neutral compatibility reference. The overall impression is instead that Defendant's product is part of, or endorsed by, Milwaukee's M18 line.

*Roku* turned on the plaintiff's failure to make a listing-specific showing of likely confusion - the court found the plaintiff had not pointed to specific listing elements demonstrating source or sponsorship confusion. Milwaukee makes that showing here. Unlike the plaintiff in Roku, Milwaukee focuses the Court's attention on Defendant's own exhibit: the product image in Dkt. 24-1 at 2, which displays "M18 V MAX" as a prominent badge on the hero image alongside battery imagery, without any disclaimer of affiliation. That specific, record-supported showing distinguishes this case from Roku in the way that matters most.

### D.      Milwaukee Does Not Need To Prevail On A Separate Trade-Dress Theory To Obtain Relief.

Defendant devotes part of its opposition to arguing that Milwaukee has not separately established trade dress or counterfeiting as to this Defendant. Dkt. 23 at 6. The Court need not resolve any separate trade-dress theory to grant preliminary relief here. The present record

6

independently establishes a likelihood of success on Milwaukee's trademark infringement and false designation of origin claims based on Defendant's use of the M18 mark in the listing and product image. *See* 15 U.S.C. §§ 1114(1), 1125(a)(1)(A).

## III.    IRREPARABLE HARM IS PRESUMED AND INDEPENDENTLY ESTABLISHED ON THIS RECORD

Because Milwaukee has shown a likelihood of success on the merits, irreparable harm is presumed. 15 U.S.C. § 1116(a). Defendant's effort to deny irreparable harm therefore fails at the outset.

Irrespective of the statutory presumption, Milwaukee has shown irreparable harm. "One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). It is likewise "well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010).

Those harms are present here. Defendant is selling a third-party power tool while using Milwaukee's M18 mark to market it as compatible with Milwaukee's platform and presenting "M18 V MAX" prominently in the main image. Dkt. 24-1 at 2. Milwaukee has no control whatsoever over the quality, safety, durability, or performance of Defendant's product. If consumers purchase the tool believing it is affiliated or endorsed by Milwaukee, and the product disappoints or injures them, Milwaukee's brand and goodwill will suffer harm that cannot be undone by a damages award. That is precisely the type of irreparable injury the Lanham Act's presumption is designed to address.

Defendant's assertion that no consumer has yet complained does not change the analysis. Dkt. 24 ¶ 8; Dkt. 25 ¶ 10. Evidence of actual confusion is not required to establish likely confusion, especially at this preliminary stage where no discovery has been conducted. *See Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 397 (2d Cir. 2021).

## IV.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR RELIEF

The balance of equities favors Milwaukee. "It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to" Milwaukee's brand. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 197 (S.D.N.Y. 2020) (Preska, J.). An infringer cannot complain about losing the ability to continue selling infringing goods. *WPIX, Inc. v. Ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).

Defendant argues that the public interest favors truthful compatibility information. Milwaukee does not disagree. But truthful compatibility information is not what Defendant is providing. Nothing in the requested injunction would prevent Defendant from using plain, non-confusing language stating that its product works with Milwaukee 18V batteries. What Milwaukee seeks to stop is Defendant's use of Milwaukee's mark as a quasi-brand identifier and selling feature - most prominently the large "M18 V MAX" badge in the hero image and the repeated "Milwaukee," "M18," and "M18 Fuel" references that go well beyond any legitimate compatibility disclosure. The injunction is narrowly directed at that conduct, not at truthful commercial speech. Trademark law protects consumers and brand owners alike from exactly this type of appropriation.

The public interest therefore favors relief because it prevents consumer confusion and protects the integrity of marketplace information.

## V.    THE TRO SHOULD REMAIN IN PLACE.

Defendant asks the Court to dissolve the TRO. That request should be denied. The record now includes Defendant's own exhibit and declarations, and that Defendant-specific record

8

supports preliminary relief rather than dissolution. Moreover, Defendant is located in China and sells exclusively through an Amazon storefront. These facts bear directly on enforceability: without the TRO, Defendant can remove its listings, transfer or withdraw account proceeds, and effectively render any future judgment unenforceable before Milwaukee could obtain permanent relief. The TRO preserves the Court's ability to provide meaningful remedies. It should remain in place.

## VI.    CONCLUSION

For the foregoing reasons, Milwaukee respectfully requests that the Court grant its motion for a preliminary injunction as to Defendant DOOYUTOOL and deny Defendant's request to dissolve or modify the Temporary Restraining Order.

Dated: April 13, 2026                    Respectfully submitted,

*/s/ Shengmao Mu*
Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*